AO 91 (Rev. 11/11)   Criminal Complaint

# UNITED STATES DISTRICT COURT
for the

Middle District of Florida

| | |
|---|---|
| United States of America<br>v.<br>Scott Carpenter, Jr. | )<br>)<br>)<br>)<br>)<br>)<br>) |

Case No.

**8:21MJ1898AAS**

*Defendant(s)*

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of   Aug. 12, 2018 to Sep. 1, 2021   in the county of   Various   in the

Middle   District of   Florida   , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1951(a) | conspiracy to interfere with interstate commerce by robbery |

This criminal complaint is based on these facts:

See Affidavit.

☑ Continued on the attached sheet.

<br>

*Complainant's signature*

Jeff Burt, ATF Special Agent
*Printed name and title*

Sworn to ~~before me and signed in my presence.~~ before me over the phone and signed by me pursuant to Fed R Crim P 4.1 and 4(d)

Date:   September 3, 2021

*Judge's signature*

City and state:           Tampa, FL           The Honorable Amanda A. Sansone, U.S.M.J.
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, Special Agent Jeffrey Burt of the Bureau of Alcohol Tobacco, Firearms and

Explosives (ATF), being duly sworn, state the following:

### I.     Introduction and Agent Background

1.     I have been a Special Agent with ATF for over fifteen years. In

connection with my official duties and as and as defined by 18 U.S.C. § 2510(7), I

am "an investigative or law enforcement officer of the United States," empowered by

law to enforce violations of federal criminal laws.

2.     I have twenty-five years of law enforcement training and experience

consisting of, but not limited to, earning a Bachelor of Science Degree in the field of

Criminal Justice from Florida State University; successfully completing the Lively

Police Academy, the Federal Law Enforcement Training Centers Criminal

Investigator Training Program, and the ATF Special Agent Basic Training (SABT);

and working as a Police Officer with the Tallahassee Police Department, an

investigator with the Florida State Fire Marshall's Office, a Special Agent with the

Florida Department of Law Enforcement, and finally a Special Agent with ATF.

3.     While employed in these positions, I received additional training in

subject matters specific to each position's requirements in furtherance of law

enforcement duties.  In connection with my official duties, I investigate a variety of

criminal violations of federal laws, including the investigation of violent crimes and

other firearms-related offenses such as armed robberies. Furthermore, during these

and other investigations, I have seized cellular telephones, reviewed evidence from

seized cellular telephones, reviewed cell site data, and consulted with other agents and law enforcement officers who have seized and/or reviewed evidence from cellular telephones.

4. I make this affidavit in support of a criminal complaint charging Scott Swinger CARPENTER, Jr. ("CARPENTER") a convicted bank robber residing in the Middle District of Florida, with conspiring to interfere with commerce by robbery, in violation of 18 U.S.C. § 1951(a).

5. Based on the facts described below, there is probable cause to believe that between August 2018 and September 2021, CARPENTER—with the assistance of a getaway driver—committed at least twelve armed robberies of Dollar Tree employees as they attempted to deposit the store's daily earnings in bank overnight deposit boxes.

6. Accordingly, based on the facts described below, there is probable cause to believe that CARPENTER committed violations of 18 U.S.C. § 1951(a) (conspiracy to interfere with commerce by robbery and interference with interstate commerce by robbery) that occurred in the Middle District of Florida and over which this Court has jurisdiction.

7. I am familiar with the facts and circumstances of this investigation either as a result of my personal involvement, training and experience, or as a result of information made available to me from other sources, including witnesses, law enforcement personnel, or investigative reports. This affidavit is intended only to show

2

that there is probable cause for the requested criminal complaint and does not set forth all of my knowledge about this matter.

## II. Probable Cause

8. All of the events described below occurred within the Middle District of Florida.

### A. Robbery #1

9. On August 12, 2018, at approximately 9:21 p.m., employees of the Dollar Tree store located at 2650 E. Highway 92, Lakeland, Florida, closed the store for the night and walked to the store parking lot, carrying the store's proceeds, which they intended to deposit in a nearby bank night depository. As the store employees attempted to enter their vehicle, they were approached by a robber carrying a semi-automatic pistol with a white or light-colored slide.

10. According to Victim-1, the robber was a black male, approximately 5'4", with a stocky build; he was wearing a black hoodie, sunglasses, and a ball cap with a camouflage bill.

11. As Victim-1 entered the driver's compartment of her vehicle, the robber placed himself between the open driver door and Victim-1 and demanded the bag she was holding. Victim-1 removed her purse from the center console of the vehicle and handed it to the robber, who refused the purse and demanded the money bag. Victim-2, who was standing in the doorway of the front passenger compartment, was in possession of the deposit bag. Victim-2 removed the store funds from the bag it

3

was being transported in and threw the bag at the robber. The bag fell in Victim-1's lap, at which time the robber grabbed it and fled the area on foot.

## B.    Robbery #2

12.    On August 5, 2019, at approximately 9:33 p.m., Victim-3, an employee of the Dollar Tree store located at 2650 Highway 92 E., Lakeland, Florida, was robbed as he attempted to deposit store proceeds at the Fifth Third Bank located at 435 S. Combee Road in Lakeland. Victim-3 closed the Dollar Tree at approximately 9:28 p.m. and traveled to the Fifth Third Bank with $1,319.22 of store proceeds. Victim-3 arrived at the bank at approximately 9:33 p.m. An armed robber approached Victim-3 at the driver's side window of his car, brandished a gray or silver revolver, and demanded money. Victim-3 handed over Dollar Tree's deposit bag, which contained $1,319.22. Victim-3 described the robber as a black male, approximately 5'7"- 5'9" tall, weighing 160-180 pounds, in his mid- to late-20's, wearing a dark red hoodie with the drawstring pulled tight so that the hood covered his nose and mouth. A still photograph capturing the robbery drawn from the bank's surveillance video appears below:



4

13.    Law enforcement review of surveillance video recovered from a nearby apartment complex revealed the getaway car, a four-door sedan that was not otherwise identifiable from the video. On the video, the robber can be seen exiting the getaway car and running to the southwest corner of the Fifth Third Bank, near the drive thru lane for the night deposit box. The getaway car drove away and turned around in the nearby apartment complex, as pictured below:



14.    A few minutes later, after the robbery was complete, the getaway car exited the apartment complex and drove to pick up the fleeing armed suspect:



15.    Based on these facts, it is probable that the armed robber and getaway car driver were in communication via cellular telephone to coordinate the pick-up following the robbery.

### C.     Robbery #3

16.     On December 23, 2019, at approximately 11:12 p.m., Victim-4 and Victim-5, two employees of the Dollar Tree store located at 3629 S. Florida Avenue, Lakeland, Florida, were robbed as they attempted to deposit store proceeds at the Fifth-Third Bank located at 4421 S. Florida Avenue in Lakeland. Upon closing the Dollar Tree for the night, Victim-4 and Victim-5 drove to the Fifth-Third bank in separate vehicles to complete the deposit. Upon arrival, Victim-4 exited her vehicle, which was parked next to the night deposit box. An armed robber brandishing a silver pistol approached Victim-4 and demanded money. Victim-4 gave the robber the deposit bag, which contained $3,717.22 of store funds. Victim-4 described the robber as a white male, approximately 5'7" to 5'9" tall, wearing a black hoodie and black pants.

17.     Law enforcement recovered video surveillance footage near the bank that depicted a small sedan in the area at the time of the robbery. Due to the quality of the video, the vehicle's make and model could not be determined.

### D.     Robbery #4

18.     On January 23, 2020, Victim-6, an employee of the Dollar Tree located at 2389 Highway 92 E., Auburndale, Florida, experienced an attempted armed robbery. At approximately 10:37 p.m., Victim-6 closed the store and traveled to the TD Bank located at 2093 Highway 92 E. in Auburndale to deposit store funds into the night deposit box. Upon arrival at the bank, Victim-6 heard noises coming from

the bushes behind her vehicle. She noticed a man approaching her vehicle, pointing a black and silver semi-automatic handgun at her. Victim-6 dropped the money bag into the deposit box and left the area.

19.     Video surveillance footage recovered from a nearby business captured the armed robber positioning himself in the bushes near the bank prior to Victim-6's arrival.

### E.     Robbery #5

20.     On February 27, 2020, Victim-7 and Victim-8, employees of the Dollar Tree located at 1625 Bartow Road, Lakeland, Florida, were robbed as they attempted to deposit store proceeds at the Wells Fargo Bank located at 1414 Combee Road South in Lakeland. At approximately 10:35 p.m., Victim-7 and Victim-8 closed the Dollar Tree and traveled together to the bank to deposit $1,381.26 into the night deposit box. When they arrived, an armed robber approached Victim-7 as she opened her driver's door to make the deposit. The robber demanded the bag of money, which Victim-7 gave to him. Victim-7 did not observe a weapon during the robbery. Victim-7 and Victim-8 described the robber as a black male, approximately 5'5"-5'8" tall, wearing a black sweater with a hoodie, black pants, black work gloves and facial coverings.

21.     A review of surveillance video footage captured the incident:

8



### F.    Robbery #6

22.    On May 26, 2020, at approximately 10:03 p.m., an armed robbery occurred at the Wells Fargo Bank located at 3095 54th Avenue S., St. Petersburg, Florida. As Victim-9 and Victim-10, two employees of Dollar Tree located at 4701 34th Street S. in St Petersburg, were attempting to deposit $2459.03 of store proceeds in the banks night deposit box, they were approached by a Black male, 5'10" to 6' tall, weighing approximately 180 lbs., wearing a dark baseball cap, dark T-shirt and jeans, and holding a black handgun. As Victim-9 got out of the driver's seat and was about to make the nightly deposit, the robber pointed his gun at her and stated "give me your fucking money." The robber then took a backpack, which contained the store funds, from the rear seat of the vehicle and fled on foot. Victim-9 stated that she never told the robber where the money was located; he just somehow knew to grab her backpack.

### G.   Robbery #7

23.    On October 22, 2020, Victim-11, an employee of the Dollar Tree located at 2389 Highway 92 E., Auburndale, Florida, experienced an attempted armed robbery. At approximately 10:29 p.m., Victim-11 and a coworker closed the store and traveled to the TD Bank located at 2093 Highway 92 E. in Auburndale to deposit $288.98 of store funds into the night deposit box. Upon arrival, Victim-11 pulled her vehicle into the area of the night deposit box and began the deposit. She heard noises coming from the bushes behind her vehicle. Victim-11 remained in the driver's seat as a man wearing a black hoodie and face mask approached her vehicle from the rear, pushed his body in towards the deposit box, and reached his hand inside the deposit box. The man pointed a black and silver semi-automatic handgun at Victim-11, who dropped the money bag into the deposit box and fled the area in her vehicle.

### H.   Robbery #8

24.    On October 28, 2020, at approximately 9:28 p.m., an armed robbery occurred in the parking lot of the Dollar Tree store located at 509 E. Brandon Boulevard, Brandon, Florida. As Victim-12 and Victim-13 walked to their vehicles in preparation to travel to a nearby bank to deposit $1,204 of store proceeds, a robber pointed a black handgun at them and stated "give me the deposit money." Fearing for her life, Victim-12 threw the money bag on the ground. The robber picked up the money bag and fled the area on foot. Victim-12 and Victim-13 described the robber

as a Black male, 5'7" tall, between 20-30 years of age, weighing approximately 140 pounds, and wearing a black hoodie and green pants.

25.    A review of video surveillance from neighboring business captured the robber walking to the area of the Dollar Tree parking lot. The video shows a bright light in the robber's hands. Based on my training and experience, I believe that this bright light likely came from the screen of a cellular telephone being used by the robber at the time. Video surveillance also captured a small silver SUV in the area at the time of the robbery.



I.    **Robbery #9**

26.    On November 15, 2020, Victim-14, an employee of the Dollar Tree store located at 3629 S. Florida Avenue, Lakeland, Florida, experienced an attempted armed robbery. At approximately 10:36 p.m., Victim-14 closed the store and traveled to the Fifth-Third Bank located at 4421 S. Florida Avenue to deposit store funds into the night deposit box. Upon arrival, Victim-14 pulled into the night deposit drive-thru lane in preparation to drop the deposit bag. As she did, a male suspect approached her vehicle and banged on the rear passenger window. The

11

unknown male brandished a black handgun, pointed it at Victim-14, and then used the gun to tap on the driver's side window while attempting to open the door. Victim-14 drove away and called police. The unknown male did not obtain any money during the robbery attempt.

### J.   Robbery #10

27.   On November 23, 2020, Victim-15, an employee of the Dollar Tree store located at 7749 Gall Boulevard, Zephyrhills, Florida, experienced an armed robbery. At approximately 10:40 p.m., Victim-15 and a coworker closed the store for the night and traveled to the Wells Fargo Bank located at 7780 Gall Boulevard in Zephyrhills with $2,920.05 of store funds. As Victim-15 walked from her vehicle to the night deposit box, she was approached by a heavy-set Black male, approximately 5'4" tall, who was brandishing a pistol and wearing a ski mask, black jacket and pants. The armed robber demanded the money bag, wrapped his arms around the victim, and threw her on the ground. Victim-15's coworker then warned her that the robber had a gun. Fearing for her life, Victim-15 gave the robber the money. The robber grabbed the money and fled from the scene. Shortly thereafter, Victim-15 and her coworker heard the screeching tires of a vehicle.

### K.   Robbery #11

28.   On December 8, 2020, Victim-16, an employee of the Dollar Tree store located at 10680 E. Bay Road, Gibsonton, Florida, experienced an armed robbery. At approximately 10:56 p.m., Victim-16 and a coworker closed the store and traveled

12

to the Fifth-Third Bank located at 10417 Gibsonton Drive in Riverview to deposit
$1,475.81 of store funds into the bank night deposit box. Approximately 22 seconds
after Victim-16 arrived at the night deposit box, a Black male, approximately 5'6"
tall, brandishing a black handgun and wearing all-black clothing, approached his car
and reached into it. Fearing for his life, Victim-16 moved to the front passenger seat
of the vehicle as the robber searched for the money. After locating the money, the
robber grabbed it and fled on foot away from the scene.



29.     On December 10, 2020, I contacted the loss prevention manager of the
Walmart store located at 9205 Gibsonton Drive in Gibsonton, Florida, and asked to
review store surveillance video in furtherance of my investigation into these armed
robberies. On surveillance video from December 8, 2020, I saw what appeared to be
a black, newer model Chevrolet Malibu enter the east parking area of the Walmart at
approximately 10:24 p.m. The vehicle drove to the far south side of the parking lot
and faced east towards the nearby Dollar Tree store. The Chevrolet Malibu had

13

tinted windows, making it difficult for me to see inside the passenger compartment. The location in which the Chevrolet Malibu parked suggests that the occupant(s) did not intend to enter the store, as he/she/they parked the car in a remote area of the parking lot despite there being many open parking spaces closer to the Walmart's doors. The Chevrolet Malibu remained in the Walmart parking lot until approximately 10:51 p.m., at which point the Dollar Tree clerks walked into view of the cameras as they departed the area of the Dollar Tree and traveled to the bank to make the night deposit. At that time, the Chevrolet Malibu is captured on surveillance video exiting the Walmart parking lot directly behind the store clerk's vehicles as they turned onto New East Bay Road. The Malibu made a left turn in a right turn only lane and drove behind the victim's vehicle.

30.     The following pictures were obtained from the Walmart surveillance described above:



14



31.     After reviewing the evidence for the above-described robberies and attempted robberies, I noted many similarities between them. All of the incidents happened within the Tampa Bay area, just after closing time, when Dollar Tree employees were in possession of store proceeds to be deposited. Each time, a single robber confronted the store employee(s) at the bank night depository or in the store parking lot after closing. In most of the above-described robberies and attempted robberies, the robber wore black clothing and was described as between 5'4" and 5'9" tall with a stocky build. Three different possible suspect vehicles have been identified, indicating the suspect may be working with co-conspirator(s).

32.     On January 22, 2021, based on my affidavit, United States Magistrate Judge Sean P. Flynn authorized a federal search warrant, 8:21-mj-1052-SPF, which required Google to provide the government with anonymized account identifiers for

15

all of the Google accounts that accessed Google services in limited geographical areas surrounding the robbery locations during the time windows in which those robberies and attempted robberies occurred.

33.     On March 23, 2021, I received results from Google, which included various unique Google account identification numbers. A review of the data identified a Google-enabled device that was present at both the October 28, 2020, Dollar Tree robbery at 509 Brandon Boulevard E., Brandon, Florida ("Robbery #8") and the Zephyrhills, Florida Wells Fargo robbery on November 23, 2020 ("Robbery #10").

34.     On April 13, 2021, I received further data from Google identifying the subscriber information for that account as follows:

- Google Account ID: 671452387202
- Name: Scott Carpenter
- e-Mail: scarpenter471@gmail.com
- Recovery e-Mail: moneyeffect77@gmail.com
- Recovery SMS: +12676905488 [US]
- Billing Name: SCOTT S CARPENTER JR
- Billing Address: SCOTT S CARPENTER JR
- 2728 W 10TH ST, LAKELAND, FL, 33805, US, +1 813-377-9953

35.     Based on that information, I conducted computer queries in law enforcement databases, which identified a Florida driver's license for Scott Swinger CARPENTER, date of birth: 12/20/1977, with a listed address of 2728 W. Tenth Street, Lakeland, Florida, 33805. The name and address on the driver's license matched those on file with Google for the suspect account.

16

36.     A criminal history query revealed that CARPENTER has earned several felony convictions, including state convictions for Battery on Law Enforcement Officer, Burglary, and Grand Theft, as well as a federal conviction in the Middle District of Florida for armed bank robbery, in violation of 18 U.S.C. §§ 2113 and 924(c), in case number 8:01-cr-273-SCB-TBM. In that federal case, the Court originally sentenced CARPENTER to 384 months in federal prison. The Court amended (and lowered) CARPENTER's sentence twice, however, and he was released from federal custody on June 2, 2016.

37.     Further investigative queries identified an updated residential address for CARPENTER of 2123 Ivey Lane in Lakeland, Florida. An electric and water service check identified CARPENTER as the registered customer for that address; service was activated on May 15, 2017.

38.     I noted that the Google subscriber information listed two telephone numbers on CARPENTER's account, (813) 377-9953 and (267) 690-5488. The first number, (813) 377-9953, was listed on the billing information related to the account while the second number, (267) 690-5488, was attached to the main account.

39.     I cross-referenced the phone numbers provided by Google to the electric and water utility's customer information related to CARPENTER's account for 2123 Ivey Lane in Lakeland. The utilities account listed the first number, (813) 377-9953, as a contact number for CARPENTER.

40.     Meanwhile, I reviewed cellular call detail records related to the second number, (267) 690-5488. I did not see anything in those records to suggest that (267) 690-5488 has been used to contact any associates of CARPENTER's. Subscriber information for (267) 690-5488 listed a name and address out of Philadelphia, Pennsylvania that does not appear to be associated with CARPENTER. Accordingly, I do not believe that CARPENTER is currently using (267) 690-5488.

41.     I conducted surveillance of 2123 Ivey Lane and observed a black 2017 Chevrolet Malibu, bearing Florida tag IIM-A38, parked in the driveway of the residence. Between April 14, 2021, and April 20, 2021, I observed the vehicle come and go from the residence numerous times. A registration query identified the registered owner as Carla Ebony Perkins, living at the same Ivey Lane address as CARPENTER.

42.     I compared the black 2017 Chevrolet Malibu owned by Perkins to the black Chevrolet Malibu captured on surveillance video following the robbery victim from the area of the Dollar Tree store located at 10680 East Bay Road in Gibsonton, Florida, on December 8, 2020. The comparison revealed the vehicles appear identical, including the style of wheels and tint on the windows:



43.     On April 14, 2021, I observed CARPENTER arrive at 2123 Ivey Lane driving a blue Ford truck bearing Florida tag HAR-D19. A registration query identified CARPENTER and Perkins as co-owners of the blue Ford truck. I observed the truck parked at the residence every day from April 14, 2021, through April 20, 2021.

44.     I observed CARPENTER in the front yard of his residence on several occasions. I noticed that CARPENTER's height and weight is consistent with victim accounts and surveillance video footage from the various robberies, excluding the May 26, 2020, armed robbery in St. Petersburg, in which the offender was described

as 5'10-6'00". The offender was most often described to be between 5'4"-5'9" with a stocky build, however, which is consistent with CARPENTER's appearance.

45.     While conducting surveillance, I observed a gray 2006 Audi A4 bearing Florida tag KLU-K05 coming and going from the residence during the day and parked in front of residence every night from April 14, 2021, through April 19, 2021. A Florida registration query revealed the registered owner of the Audi to be Inez Clemente of 1225 Tedrow Lane, Lakeland, Florida, 33805. Further investigation revealed that the current tag on the Audi had previously been displayed on a gray 1999 Buick four-door sedan. Records indicate that the tag was transferred to the Audi on March 16, 2020.

46.     On April 16, 2021, I conducted surveillance at Clemente's listed address, 1225 Tedrow Road in Lakeland, Florida. I observed a gray Buick four-door sedan parked in the yard of the residence. The vehicle appeared to have been in the same spot for an extended amount of time. I compared the gray Buick four-door sedan to a similar suspect vehicle captured on surveillance video footage the night of August 5, 2019, during the armed robbery of Dollar Tree employees at the Fifth Third Bank at 435 S. Combee Road in Lakeland ("Robbery #2"). Surveillance video captured both the vehicle in the area during the time of the robbery as well as the robber running to the vehicle following the robbery. I noticed that the vehicle parked at 1225 Tedrow Road on April 16, 2021, and the vehicle captured on surveillance

video during the robbery on August 5, 2019, appeared to be the same make, model, and color:

47.    The below pictures show the vehicle captured on surveillance video during Robbery #2, the armed robbery on August 5, 2019:

 

48.    The below picture shows the vehicle I observed parked at 1225 Tedrow Road, Lakeland, Florida:



21

49.     On April 23, 2021, I contacted the office for United States Probation, Middle District of Florida (Tampa Division) and spoke with CARPENTER's probation officer. The probation officer informed me that her primary contact number for CARPENTER is (352) 512-5694 and that she has recently communicated with CARPENTER via (352) 512-5694.

50.     On April 23, 2021, the Honorable Anthony Porcelli, United States Magistrate Judge, issued a federal search warrant, case number 8:21-mj-1409-AEP, obligating Metro PCS/T-Mobile USA to provide the United States with cell site data related to CARPENTER's two cellular phones, (813) 377-9953 (the one tied to his Google account), and (352) 512-5694 (the ones by Probation) for the time span of August 11, 2018, through December 9, 2020, inclusive (i.e. the time span covering all eleven of the robberies and attempted robberies described above).

51.     Pursuant to that search warrant, I received cell site data from Metro PCS regarding CARPENTER's accounts.  The data received from Metro PCS was plotted using commercially available software, specifically CellHawk. Tower locations were verified by Global Positioning Satellite (GPS) coordinates. The Metro PCS data was received into ATF custody and maintained as evidence.

52.     A review of the cell site and tower data indicates that at least one of CARPENTER's two devices identified above was active very near Robberies #3, 5, 8, 9, 10, and 11 during the windows of time a few minutes before or after each of those armed robberies. More specifically, one of CARPENTER's connected with

22

towers within 0.4 miles of Robbery #3, within 1.2 miles of Robbery #5, within 0.3 miles of Robbery #8, within 0.6 miles of Robbery #9, within 1.9 miles of Robbery #10, and within 0.6 miles of Robbery #11 during those time windows.

53.     Further review of the data indicates that after Robberies #3, 5, and 9, CARPENTER's device returned to his house, whereas after Robberies #8, 10, and 11, CARPENTER's device returned to the Lakeland area, though not specifically to the proximity of his residence.

54.     Based on my training and experience from being involved in numerous pattern armed robbery investigations like this one, I know that serial armed robbers often begin the series of robberies in an area with which they are familiar. In this investigation, the first five robberies were committed in Polk County, Florida, in and near Lakeland. Seven total robberies occurred in Polk County, where CARPENTER lives and where a 2017 Chevrolet Malibu and gray four-door Buick sedan matching vehicles involved in robberies are also located and connected with CARPENTER.

55.     Further review of the data indicates that during Robberies #9 and 11, one of CARPENTER's two devices identified above was in communication with (614) 517-6532 near the robberies during the windows of time in which the robberies occurred:

> a)     On November 15, 2020, the date of Robbery #9, at approximately 9:14 p.m., CARPENTER's device received an incoming call from (614) 517-6532. The call lasted 84 minutes,

ending at 10:38 p.m., just two minutes after Robbery #9

occurred. The cell site records indicate that the call was serviced

by a cell tower located at 4715 S. Florida Avenue in Lakeland,

which is approximately .6 miles away from where Robbery #9

occurred. Subsequent tower hits indicate CARPENTER's device

returned to his home following the robbery. Based on my training

and experience, this pattern of communication is consistent with

a robber (CARPENTER) maintaining an open line of

communication with his lookout/getaway driver (the user of the

(614) 517-6532) as he prepared to commit the armed robbery,

scoped out the scene, waited for his opportunity, committed the

robbery, and fled.

b)      On December 8, 2020, the date of Robbery #11, at

approximately 10:25 p.m., CARPENTER's device received an

incoming call from (614) 517-6532. The call lasted 31 minutes,

ending at 10:56 p.m., the same time at which the robbery

occurred.  The cell site records indicate that the call was serviced

by a cell tower located at 10612 Cone Grove Road, Riverview,

Florida, which is approximately .6 miles from where Robbery

#11 occurred. Subsequent tower hits indicate CARPENTER's

device returned to his home following the robbery. Based on my

24

training and experience, this pattern of communication is consistent with a robber (CARPENTER) maintaining an open line of communication with his lookout/getaway driver (the user of (614) 517-6532) as he prepared to commit the armed robbery, scoped out the scene, waited for his opportunity, committed the robbery, and fled.

56.     A query of law enforcement databases and subscriber records regarding (614) 517-6532 identified Kizzi Rothwell as the subscriber with an address of 725 Bryon Court, Lakeland, Florida. Review of CARPENTER's cellular toll records revealed over 6,000 contacts between CARPENTER's and Rothwell's devices over approximately three years.

57.     On April 20, 2021, I surveilled CARPENTER and observed him driving the black Chevy Malibu referenced above. Agents followed CARPENTER to 725 Bryon Court in Lakeland (i.e. Rothwell's residence), where he remained for a short time before departing the residence in the Malibu as the passenger with a female driver. Agents followed the Malibu to an auto repair center in Tampa. Shortly thereafter, agents observed CARPENTER depart the auto repair center in Malibu being followed by a light blue Chrysler four door belonging to Rothwell. Rothwell followed CARPENTER to a Wawa in Tampa where both CARPENTER and Rothwell were positively identified.

58.     Based on the information described above, there is probable cause to believe that Rothwell served as CARPENTER's accomplice for at least Robberies #9 and 11. I suspect that Rothwell may have assisted CARPENTER with one or more of Robberies #1-8 and 10 as well.

## L.     Robbery #12

59.     On August 11, 2021, a twelfth armed robbery fitting the pattern occurred within the Tampa Division of the Middle District of Florida.

60.     At approximately 10:38 p.m., Victim-17, an employee, closed the Dollar Tree store located at 9221 N 56th Street, Temple Terrace, Florida and traveled to the Wells Fargo Bank located at 9775 N 56th Street, Temple Terrace, to deposit approximately $1,600 of store funds into the bank night deposit box. Seconds after Victim-17 arrived at the night deposit box, a Black male, described as approximately 5'10" tall, brandishing a black handgun and wearing dark clothing, approached Victim 17's car and ordered Victim-17 to give him the money. Fearing for his life, Victim-17 gave the store's money to the armed robber, who fled on foot away from the scene.

61.     I reviewed video surveillance footage recovered of the armed robbery provided by the Wells Fargo bank. I noticed that the robber used the same methods and tactics as were used in the eleven armed robberies between August 11, 2018, and December 9, 2020, for which I had identified CARPENTER as the primary suspect. I also noticed that the man who committed the August 11, 2021, armed robbery

appeared to be approximately the same height, weight, and body type as the robber in the previous eleven offenses.

62.     On August 26, 2021, the Honorable Anthony E. Porcelli, United States Magistrate Judge, issued a federal search warrant, case number 8:21-mj-1861-AEP, obligating Metro PCS/T-Mobile USA to provide the United States with historical cell site data related to CARPENTER's cellular phone (352) 512-5694 (the number used by Probation to communicate with CARPENTER) for the time span covering August 4, 2021, through August 11, 2021.

63.     Pursuant to that search warrant, I received historical cell site data from Metro PCS regarding CARPENTER's accounts. A review of the cell site and tower data indicates that CARPENTER's cellular phone (352) 512-5694 was active very near the Temple Terrace robbery approximately 30 minutes prior to the robbery.

64.     Further review of data revealed CARPENTER's device was utilizing towers in the area of the Dollar Tree store in Temple Terrace on the night of August 10, 2021, the day before the robbery. Specifically, at 10:23 p.m., CARPENTER placed a call 22 minute call to Rothwell's (614) 517-6532 cell phone and a 7 minute call to Rothwell at 11:01 p.m. CARPENTER's (352) 512-5694 device utilized a tower positioned on the eastern perimeter of the Dollar Tree store during the 7 minute call and a tower a few miles from the store for the previous call. Based on my experience investigating Hobbs Act robberies, I know that offenders often conduct surveillance of businesses in preparation to commit crimes in the near future

65.    Accordingly, I suspect that CARPENTER committed the August 11, 2021, robbery as well, and thus committed another set of violations of 18 U.S.C. §§ 922(g)(1), 924(c), and 1951.

**L.    CARPENTER and Rothwell Observed Preparing for Robbery #13**

66.    On August 26, 2021, the Honorable Anthony E. Porcelli, United States Magistrate Judge, issued a federal search warrant, case number 8:21-mj-1857-AEP, obligating Metro PCS/T-Mobile USA to provide the United States with prospective cell site location data related to CARPENTER's cellular phone (352) 512-5694 (the number used by Probation to communicate with CARPENTER).

67.    Pursuant to the search warrant, I received and began monitoring location data for CARPENTER's device.

68.    On August 31, 2021, data indicated CARPENTER's device traveled from Ivey Lane in Lakeland (i.e. the approximate location of CARPENTER's home) to the area of N. Wilson Avenue and E. Van Fleet Drive in Bartow. The device was in the area just north of the intersection at 9:20 p.m. Data then placed CARPENTER's device on Highway 98 just north of Bartow at 9:35 p.m., ultimately driving to 725 Bryon Court (believed to be the residence of CARPENTER's girlfriend and accomplice, Kizzi Rothwell), where the device remained until approximately 12:50 a.m., when CARPENTER's device returned to Ivey Lane (i.e. CARPENTER's home).

69.     I conducted computer queries concerning those locations and determined that there is a Dollar Tree store located at 1370 N Broadway Avenue in Bartow that closes at 9:00 p.m. on weeknights. I observed that N. Wilson Avenue runs directly behind the Dollar Tree complex with entrances and exits leading to the store. It thus appears that CARPENTER was surveilling the Dollar Tree, possibly in preparation for another robbery.

70.     The next night, on September 1, 2021, at approximately 7:30 p.m., I and other law enforcement officers began in-person mobile surveillance on CARPENTER. At that time, agents observed CARPENTER depart his residence at 2123 Ivey Lane in his blue 2005 Ford truck. After fueling up at a nearby gas station, CARPENTER drove to 725 Bryon Court, Lakeland, Florida, where he picked up a black female suspected to be Kizzi Rothwell.

71.     At approximately 9:15 p.m., agents followed CARPENTER and Rothwell to the parking lot of a Walmart located at 1720 E. Hillsborough Avenue, Tampa, Florida. CARPENTER pulled slowly into the parking area of the far west side, which was secluded with tree cover. CARPENTER parked directly across from a Dollar Tree store located at 1605 E. Hillsborough Avenue, Tampa, Florida. CARPENTER turned his lights off and remained in that position for approximately 15 to 20 minutes. During that time, I observed CARPENTER get out of and into his vehicle several times.

29

72.     At approximately 9:30 p.m., I observed the Dollar Tree business turn the exterior lights off. A short time later, CARPENTER departed the Walmart parking lot onto Hillsborough Avenue, driving west. CARPENTER traveled a short distance before turning back east, driving very slowly in front of the Dollar Tree store. CARPENTER passed the store, turned south on 19th Street, and then turned west on E Giddens Avenue, which leads directly behind the Dollar Tree store. CARPENTER again drove very slowly past the southern (rear) side of the Dollar Tree store, eventually turning north on 15th Street and back out to E. Hillsborough Avenue, at which point he made a second slow pass in front of the Dollar Tree store.

73.     Agents followed CARPENTER and Rothwell back to the area of 725 Bryon Court (Rothwell's home), where they arrived at approximately 10:15 p.m. Other than the surveillance he conducted of the Dollar Tree store, CARPENTER did not make any other between picking up Rothwell a little after 7:30 p.m. and returning to her house just under 3 hours later. Based on my training and experience, I suspect CARPENTER was conducting surveillance in preparation to rob Dollar Tree employees on a future date or that he intended to rob them that night but did not observe the right opportunity to do so that night.

### III.   Conclusion

74.     Based on the information described above, there is probable cause to believe that CARPENTER committed each of the twelve armed robberies described above, and in the process committed twelve violations each of 18 U.S.C. §§

922(g)(1), 924(c), and 1951, that Rothwell and possibly others assisted him in one or more of those robberies, and that he is preparing to conduct additional robberies in the future, with the help of Rothwell and/or others.

75.    I therefore respectfully request that this Court authorize the requested criminal complaint charging CARPENTER with conspiring to interfere with interstate commerce by robbery, in violation of 18 U.S.C. § 1951(a).


_____
Special Agent Jeffrey Burt
Bureau of Alcohol, Tobacco, Firearms
and Explosives


Affidavit submitted by email and attested to me as true and accurate via telephone consistent with Federal Rules of Criminal Procedure 4.1 and 41(d)(3), this _3_ day of September, 2021.

_____
AMANDA A. SANSONE
United States Magistrate Judge

31